# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3963-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FERNANDO CHIRENO,

     Defendant-Appellant.

_____

> Argued March 13, 2019 – Decided April 3, 2019
>
> Before Judges Fuentes, Accurso and Vernoia.
>
> On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 08-09-1216.
>
> Joseph V. Saykanic, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Joseph V. Saykanic, on the brief).
>
> Marc A. Festa, Senior Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Marc A. Festa, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Fernando Chireno appeals from the denial of his petition for post-conviction relief (PCR), following an evidentiary hearing at which his trial counsel testified. Because the PCR court was correct to find defendant failed to establish either prong of the Strickland[1] standard, we affirm.

Defendant murdered his estranged wife in front of her home in Passaic with an ax he purchased at Home Depot for the purpose several hours before. Police found their baby sleeping inside and their five- and seven-year-old daughters huddled together under a blanket. The jury heard an eyewitness account of the neighbor, who saw from her window defendant chase his screaming wife into the street while striking her repeatedly with what the neighbor thought was a bat.

The jury was also presented with the testimony of the victim's sister, who claimed defendant was incensed by his wife's refusal to dismiss the domestic violence restraining order she had recently obtained against him. The sister testified defendant demanded to know where his wife was and threatened her life in the days before her death. The jury also viewed security video from Home Depot of defendant selecting the ax, as well as a video the victim made of

---

[1] Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

A-3963-16T4

defendant months before her death of him threatening to kill her while wielding a large knife. The victim can be heard on the video saying she was recording defendant's threats for her family to give to the police after defendant kills her. The jury also heard a recording of a telephone call defendant made to his mother-in-law a year after the murder confessing he killed her daughter out of blinding jealousy and begging her forgiveness.

Most bizarrely, it heard the testimony of a cab driver who had driven the victim's brother to where she was murdered shortly after she was killed. The brother showed the driver a picture of defendant, saying he was sure he was the murderer, and if the driver ever saw him he should call the police. Shortly after dropping the brother off, the driver did see defendant standing on a street corner a few blocks away. Defendant got into the cab and asked to be taken across town. Instead, the cab driver drove defendant to the scene, where the driver jumped from the cab, calling to police. The driver testified that when defendant realized where the cab was headed, he said "this son of a bitch is going to have me arrested." As police handcuffed defendant, a small crowd, including members of the victim's family, rushed over. The arresting officer testified defendant immediately admitted he had killed his wife and said to him in Spanish, "the family of my wife is going to kill me."

 A-3963-16T4

Because defendant admitted he killed his wife, the trial was largely a battle between two experts over whether he was legally responsible for his conduct. Defendant's expert, Robert Latimer, a board-certified psychiatrist, testified defendant had long suffered from a schizophrenic disorder, paranoid type, manifested by delusions, hallucinations, conjugal paranoia and grandiosity. As we noted in our opinion on direct appeal, "[i]n Dr. Latimer's opinion, defendant killed his wife unwittingly because 'he was doing what God told him' and did not appreciate that it was wrong." State v. Chireno, No. A-3733-10 (App. Div. July 18, 2014) (slip op. at 11). Dr. Latimer testified defendant killed his wife while in the grip of an acute psychotic state.

The State's forensic psychiatrist, Daniel Greenfield, agreed defendant suffered from a psychotic thought disorder, but did not believe defendant's symptoms were acute or schizophrenic. In his view, defendant was feigning his symptoms; a view shared by the psychiatrist who examined defendant in the hours after the murder. Dr. Greenfield testified "defendant's actions before and after the killing showed a deliberate plan inconsistent with an active psychosis and response to hallucinations and further demonstrated his understanding of the nature, quality and wrongfulness of his actions." Ibid. Dr. Greenfield's view was that defendant killed his wife out of jealousy.

A-3963-16T4

Defendant testified in his own behalf, describing his long history of mental illness and the inadequate and inhumane treatment he received growing up in the Dominican Republic. He claimed he killed his wife because he was commanded to do so by voices in his head that started after he saw her having sex with her cousin. Defendant told the jury he saw his wife in the courtroom and read aloud several letters he had written to her.

The trial judge instructed the jury to consider evidence of defendant's mental condition in determining whether the State established the mental state required for proof of each crime charged, N.J.S.A. 2C:4-2, and on the defense of insanity and charged on provocation manslaughter, reckless manslaughter and aggravated manslaughter as well as murder. Chireno, slip op. at 3. The jury convicted defendant of first-degree murder, N.J.S.A. 2C:11-3(a)(1) to (2); second-degree burglary, N.J.S.A. 2C:18-2; third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d), second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and, in a bifurcated proceeding, of committing the murder by his own conduct, during the commission of a burglary and in violation of a domestic violence restraining order, N.J.S.A. 2C:11-3(b)(4)(g), and contempt of a domestic violence restraining order, N.J.S.A.

2C:29-9(b)(1).  Chireno, slip op. at 2-3.  After appropriate mergers, the judge sentenced defendant to a mandatory term of life without parole for the murder, N.J.S.A. 2C:11-3(b)(4)(g), and to a consecutive ten-year term for endangering. Chireno, slip op. at 3.

Defendant appealed, arguing the trial judge erred in failing to instruct the jury that a continuing course of ill treatment of defendant by his wife could support a passion/provocation verdict.  Id. at 12.  In his supplemental pro se submissions, defendant raised another seven issues, some with several sub-points, including allegations of error in the failure to supplement the record with evidence in support of defenses of insanity and diminished capacity, failure to declare a mistrial, objections to the verdict sheet and the court's findings on sentencing and his objections to the continuing service of a juror who did not deliberate.  Id. at 12-14.  We rejected all of the arguments as without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), and affirmed defendant's conviction and sentence.  Chireno, slip op. at 17-18.  The Supreme Court denied defendant's petition for certification.  State v. Chireno, 220 N.J. 269 (2015).

Defendant filed a timely petition for PCR claiming his trial counsel was ineffective for having failed to obtain defendant's psychiatric records from the

Passaic County jail and provide them to Dr. Latimer and that newly discovered evidence, namely his psychiatric records from the Department of Corrections, both of which show defendant suffers from schizophrenia, chronic paranoid type, demonstrate he was wrongly convicted. Additionally, defendant asserted he was denied effective assistance of counsel and the right to a fair trial by being forced to appear unshaven and in inappropriate clothes, which prejudiced him before the jury. He also claimed his counsel failed to object to a member of the jury attending a barbeque in the course of the trial with a family member of the prosecuting attorney, which defendant asserted tended to show bias on the part of the juror and possible conflict on the part of the prosecutor.

Judge Reddin, who presided over defendant's trial, conducted an evidentiary hearing on defendant's petition. Although finding defendant had not established a prima facie case of ineffective assistance entitling him to an evidentiary hearing, see State v. Preciose, 129 N.J. 451, 462-64 (1992), the judge nevertheless determined to conduct a hearing for the purpose of having defendant's trial counsel testify.

Trial counsel testified he had practiced law for over fifteen years at the time of defendant's trial and limited his practice to criminal defense. He estimated he had tried well over fifty cases, including fifteen murder trials. He

testified the State was unwilling to extend any plea offer and, in light of the State's evidence, the only viable defense in his view was insanity. Counsel testified to finding defendant "a very disturbed person," and explained he retained Dr. Latimer to examine defendant and opine as to whether defendant could be classified as legally insane. Trial counsel asserted he obtained defendant's psychiatric records from the jail at his request, and they were provided to both testifying experts. He also testified he made a motion for mistrial based on jury taint at defendant's behest, although he did not believe it should or would succeed, but did not consider a motion for judgment notwithstanding the verdict as it would have been frivolous.

After reviewing the trial record, defendant's petition and the briefs and hearing trial counsel's testimony and the argument of counsel, Judge Reddin denied the petition in a decision on the record. The judge found trial counsel a very experienced criminal defense lawyer and a credible witness. The judge recounted the overwhelming evidence the State presented, not only of the facts of the murder, but also defendant's plan to kill his wife and the number of purposeful steps required to execute it. The judge recounted defendant's effort to escape and his response to the cab driver driving him back to the scene and his statement to the officer that his wife's family were going to kill him as

8

powerful evidence of defendant's understanding of the nature and quality of his acts and "that what he was doing was wrong."

The judge reviewed the testimony of the experts, both of whom he found well prepared and presented clear and cogent testimony. He found Dr. Latimer, in particular, an exceptionally good witness, whose opinion the jury simply rejected. Although acknowledging the testimony of trial counsel that he provided the experts with defendant's psychiatric records from the jail, the judge deemed them irrelevant, as too distant from the events of the days leading up to the murder. The judge found that especially true in light of defendant being examined by a psychiatrist at a local hospital shortly after the murder and found to be feigning symptoms of acute psychosis.

Finally, the judge rejected as untrue defendant's claims of being unkempt and ill-clothed in front of the jury, noting he commented on defendant's appropriate attire nearly every day of the trial on the record before the jury was seated. He also dismissed as untrue that the prosecutor, or any member of her family, had any contact with a juror. The judge noted he voir dired the juror on the record and denied defense counsel's motion for mistrial, a decision affirmed on appeal. The judge rejected defendant's claim that his trial counsel was in any manner deficient, or that defendant was in any way prejudiced by anything his

counsel did or did not do at trial. Finding no merit in any of defendant's claims under the <u>Strickland</u> test, the judge denied defendant's petition.

Defendant appeals, reprising the arguments he made to the trial court. He casts the issues as follows:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR [PCR] SINCE NEWLY OBTAINED EVIDENCE BY PCR COUNSEL—NAMELY, DEFENDANT'S MENTAL HEALTH RECORDS FROM THE NEW JERSEY DEPARTMENT OF CORRECTIONS (DOC) AND NEW JERSEY STATE PRISON (NJSP) REVEAL THAT DEFENDANT'S CONVICTION WAS BASED ON A MISDIAGNOSIS OF MALINGERING, AND HAD THE JURY BEEN INFORMED THAT, IN REALITY, DEFENDANT WAS AFFLICTED WITH CHRONIC PARANOID SCHIZOPHRENIA, IT WOULD HAVE FOUND HIM NOT GUILTY BY REASON OF THIS INSANITY.
>
> POINT II
>
> THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR [PCR] SINCE NEWLY OBTAINED EVIDENCE BY PCR COUNSEL—NAMELY, DEFENDANT'S MENTAL HEALTH RECORDS FROM THE PASSAIC COUNTY JAIL (PCJ) REVEAL THAT DEFENDANT'S CONVICTION WAS BASED ON A MISDIAGNOSIS OF MALINGERING, AND HAD THE JURY BEEN INFORMED THAT, IN REALITY, DEFENDANT WAS AFFLICTED WITH CHRONIC PARANOID SCHIZOPHRENIA IT WOULD HAVE

FOUND HIM NOT GUILTY BY REASON OF THIS INSANITY.

POINT III
THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR [PCR] AS HE WAS DEPRIVED OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AS HE WAS FORCED TO APPEAR AT TRIAL IN AN UNKEMPT, UNSHAVEN STATE, AND WHILE WEARING A WRISTBAND IDENTIFYING HIM AS BEING INCARCERATED.

POINT IV

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR [PCR] AS THE ASSISTANT PROSECUTOR WHO TRIED THE CASE ATTENDED A BARBECUE AT WHICH SHE SHARED A TABLE WITH A JURY MEMBER; THE PROSECUTORIAL MISCONDUCT DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY AND TO DUE PROCESS.

POINT V

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF AS TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE.

In his pro se supplemental brief, defendant further argues:

POINT I

THE DEFENDANT'S CONVICTIONS MUST BE VACATED AS THE DEFENDANT WAS DEPRIVED

OF HIS SIXTH AMENDMENT AND NEW JERSEY STATE CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DUE TO HIS TRIAL COUNSEL'S FAILURE TO INVESTIGATE OR ASSERT THE DEFENSE OF DIMINISHED CAPACITY (MENTAL DISEASE OR DEFECT); AT THE VERY LEAST, THERE MUST BE AN EVIDENTIARY HEARING; U.S. CONST. AMEND. VI; N.J. CONST. (1947) ART. 1, PAR. 10 (PARTIALLY RAISED BELOW)

POINT II

DEFENDANT'S PETITION FOR [PCR] SHOULD BE GRANTED AS THE DEFENDANT'S SENTENCE IS ILLEGAL AS THE SENTENCING JUDGE FAILED TO CONSIDER ANY MITIGATING FACTORS.

A.  AGGRAVATING FACTORS DID NOT APPLY AND THE COURT DID NOT OBTAIN THE CONSENT OF THE DEFENDANT.

B.  DE NOVO REVIEW IS SOUGHT TO RESOLVE THIS ILLEGAL SENTENCE.

C.  THE IMPOSITION OF THE LIFE WITHOUT PAROLE SENTENCE MANDATES THAT THE "NO EARLY RELEASE ACT" IS ILLEGAL AND UNCONSTITUTIONAL.

POINT III

THE ISSUES RAISED ON DIRECT APPEAL ALONG WITH THE ISSUES RAISED ON COLLATERAL REVIEW SATISFY BOTH PRONGS OF THE STRICKLAND/FRITZ STANDARD, IF NOT PRESUMED PREJUDICE UNDER CRONIC (AND ESTABLISH THAT THE DEFENDANT WAS

12

DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL) EITHER INDIVIDUALLY OR CUMULATIVELY MANDATING A REVERSAL OF CONVICTIONS OR, AT THE VERY LEAST, A REMAND FOR FURTHER POST-CONVICTION PROCEEDINGS (PARTIALLY RAISED BELOW).

POINT IV

PCR COUNSEL VIOLATED R. 3:22-6(D) REQUIRING A REMAND AND FURTHER EVIDENTIARY HEARINGS (NOT RAISED BELOW).

Our review of the record convinces us that none of those arguments is of sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2). Judge Reddin carefully considered each of the claims raised by defendant's counsel. We agree with his finding that defendant failed to demonstrate the performance of his trial counsel was substandard or that, but for any alleged errors, the result would have been different. See Strickland, 466 U.S. at 687-88, 694.

As to defendant's supplemental claims, the jury was charged on diminished capacity as noted in our opinion on direct appeal. See Chireno, slip op. at 3 ("the judge instructed the jury on its obligation to consider evidence of defendant's mental condition in determining whether the State established the mental state required for proof of each crime charged, N.J.S.A. 2C:4-2").

13

Defendant's sentence is not illegal, and we have already addressed the claims of error raised in this matter and on direct appeal. Finally, we find no merit to defendant's claim that his counsel violated <u>Rule</u> 3:22-6(d).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION